**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnny ESTRELLA, a/k/a Percio Geraldo, a/k/a Pedro Hidelgo, Defendant–Appellant.**

**No. 90–3182.**

United States Court of Appeals, Tenth Circuit.

April 19, 1991.

Submitted on the Briefs: *

Lee Thompson, U.S. Atty., and Michael G. Christensen, Asst. U.S. Atty., Wichita, Kan., for plaintiff-appellee.

Charles D. Anderson, Federal Public Defender, and Marilyn M. Trubey, Asst. Federal Public Defender for the District of Kansas, Topeka, Kan., for defendant-appellant.

Before MOORE, Circuit Judge, and ALDISERT,** Circuit Judge for the Third Circuit, and McWILLIAMS, Circuit Judge.

McWILLIAMS, Circuit Judge.

In a one-count indictment, Johnny Estrella was charged with the possession of approximately one kilogram of cocaine with an intent to distribute the same in violation of 21 U.S.C. § 841(a)(1). A jury convicted Estrella of this charge and he was sentenced to imprisonment for sixty-three months, placed on supervised release for a term of four years following his release from incarceration, and fined $80,633, consisting of $76,233 for costs of incarceration, and $4,400 for costs of supervised release.

■ We need not recite the government's evidence in any great detail. It is sufficient to state that Estrella was arrested in the Wichita, Kansas airport after a flight from Dallas, Texas to Wichita. Shortly before the arrest, airport security officers noticed Estrella throw some "objects" under a parked car. These "objects" were retrieved by the officers and it turned out that they were packages containing cocaine. An ensuing search of Estrella's person disclosed five bags of white powder affixed to Estrella's body with elastic bandages. After testing, the powder was determined to be cocaine.

When interviewed by a Drug Enforcement Administration agent the following day, Estrella said he found the packages on the plane and thought they contained money.

At trial, Estrella testified in his own behalf and stated that he knew he was a courier for the cocaine found in the packages which he threw under the parked car and the bagged cocaine found on his body, but that he was acting under duress and coercion. In this regard, he testified that a few days before his arrest he flew to New York City with a Tony Sosa with whom he had been living in Wichita, Kansas, and that in New York he obtained the cocaine in question from Sosa and was told that he was to deliver the cocaine to a Ramon at the Wichita airport. Estrella stated that Sosa had threatened him and his family with physical harm, if not death, if he did not act as a courier. Estrella also testified that he was fearful that Ramon would be armed. The family pastor testified that Estrella's wife had left Wichita a few days before the trial because she was fearful for her own life if Estrella "named names" at his trial.

It was on this general state of the record that a jury convicted Estrella of the crime charged. On appeal counsel argues that the evidence does not support the jury's verdict. We disagree. Certainly the government's case-in-chief established a *prima facie* case of guilt. Estrella's testimony concerning duress and coercion only created an issue of fact which the jury could and did resolve adversely to Estrella.[1] *United States v. Boomer,* 571 F.2d 543 (10th Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 411 (1978); *United States v. Stork,* 421 F.2d 180, 181 (10th Cir.), *cert. denied,* 398 U.S. 910, 90 S.Ct. 1704, 26 L.Ed.2d 70 (1970); *Barton v. United States,* 407 F.2d 1155, 1157 (10th Cir. 1969).

---

* The parties to this appeal have indicated that oral argument is not desired. After examining the briefs and the appellate record, this three-judge panel has determined that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

** Honorable Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designation.

1. The jury was given an instruction concerning duress and coercion to which there was no objection.

Certainly the jury was not required to believe Estrella's testimony. Estrella's credibility was a matter to be resolved by the jury and, in this connection, we note that his statement to the DEA agent given the day after his arrest differed from his testimony at trial. Sosa and Ramon were, of course, nowhere to be found. Be that as it may, the evidence is sufficient to support the jury's verdict.

█ On appeal, counsel also argues that the fine of $80,633 for cost of incarceration and cost of supervised release should be set aside citing *United States v. Labat*, 915 F.2d 603, 607 (10th Cir.1990). The United States agrees.

In *Labat*, which postdates the district court's imposition of sentence, we held that where a "punitive fine" has not been imposed under U.S.S.G. § 5E1.2(a) because of § 5E1.2(f) (which provides that the court may waive the fine if it determines the defendant is unable to pay or the fine would unduly burden the defendant's dependents), a district court may not thereafter impose an "additional fine" under § 5E1.2(i) for the cost of incarceration. In the instant case it is agreed that the district did not impose a "punitive fine" under § 5E1.2(a), which under the guideline is mandatory unless the district court waives it upon finding that the conditions of § 5E1.2(f) are met. Therefore, under *Labat*, the district court in the instant case could not impose an "additional fine" provided for in § 5E1.2(i). Section 5E1.2(i) itself provides that any "additional fine" is "subject to the provisions of subsection (f)" concerning indigency.[2]

The judgment imposing a fine in the sum of $80,633 for cost of incarceration and cost of supervised release is vacated. Otherwise, the judgment and sentence are affirmed.

---

[2] As in *Labat*, the only evidence relating to Estrella's ability to pay any fine was contained in the pre-sentence report which concluded that Estrella had no present ability to pay a significant fine, would possibly be deported following his release from prison, and recommended that there be no fine.